# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SHAWNA S.,

    **Plaintiff,**

v.

ANDREW M. SAUL, Commissioner of Social Security,

    **Defendant.**

Case No. 19-CV-1076-JAR

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff's application for disability and disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff alleges that the Administrative Law Judge ("ALJ") erred in determining her residual functioning capacity ("RFC") by discounting her treating source's opinion and by picking and choosing the evidence of record to support his RFC finding. Because the Court concludes that Defendant Commissioner's findings are supported by substantial evidence, the Court affirms Defendant's decision.

## I.  Procedural History

On November 10, 2015, Plaintiff protectively applied for a period of disability and disability insurance benefits. On November 25, 2015, Plaintiff also applied for supplemental social security income benefits. In both applications, she alleged a disability onset date of January 26, 2015. Plaintiff's applications were denied initially and upon reconsideration. She then asked for a hearing before an ALJ.

After a hearing on December 12, 2017, the ALJ issued a written decision on April 3, 2018, finding that Plaintiff was not disabled. Given the unfavorable result, Plaintiff requested reconsideration of the ALJ's decision from the Appeals Council. Plaintiff's request for review was denied on January 30, 2019. Accordingly, the ALJ's April 2018 decision became the final decision of the Commissioner.

Plaintiff filed a Complaint in the United States District Court for the District of Kansas. She seeks reversal of the ALJ's decision on benefits and remand. Because Plaintiff has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II. Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[1] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[3]

## III. Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[4] An individual

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

---

[1] *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

[2] *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[3] *Id.*

[4] 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(a).

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.[5]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[6] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[7]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability, (2) whether the claimant has a severe, or combination of severe, impairments, and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[8] If the impairment does not meet or equal one of these designated impairments, the Commissioner must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[9]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[10] The claimant bears the burden in steps one through four to prove a

---

[5]*Id*. § 423(d)(2)(A).

[6]*Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[7]*Barkley v. Astrue*, Case No. 09-1163-JTM, 2010 WL 3001753, at *2 (D. Kan. Jul. 28, 2010).

[8]*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[9]*Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[10]*Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

disability that prevents performance of his past relevant work.[11] The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[12]

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. He determined at step two that Plaintiff had the following severe impairments: major depressive disorder, post-traumatic stress disorder, and borderline personality disorder. At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. Continuing, he determined that Plaintiff had the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is moderately limited in the ability to understand and remember detailed instructions; carry out detailed instructions; and maintain attention and concentration for extended periods. Therefore, the claimant is found to have the residual functioning capacity for performing jobs with simple, routine, repetitive tasks, involving only simple decisions, and in general, relatively few work place changes. She can occasionally interact with supervisors, coworkers, and the general public.[13]

The ALJ determined at step four that Plaintiff was unable to perform any past relevant work. After considering Plaintiff's age, education, work experience, and RFC, he determined at step five that jobs existed in significant numbers in the national economy that Plaintiff could still perform. Thus, the ALJ concluded that Plaintiff had not been under a disability from January 26, 2015, through the date of his decision.

---

[11]*Lax*, 489 F.3d at 1084.

[12]*Id.*

[13]Doc. 10 at 37.

**IV.  Discussion**

Plaintiff challenges the ALJ's RFC determination by asserting that the ALJ erred by failing to properly evaluate the opinion of the treating medical source, Ms. Biondo, a licensed master's level psychologist ("LMLP").  Biondo found that Plaintiff would miss four days of work per month, be off-task 25% of the time or more, and would suffer moderate limitations in understanding and memory, moderate to extreme limitations in sustained concentration and persistence, extreme limitations in social interaction, and moderate to extreme limitations in adaption.  Plaintiff contends that the ALJ erred by stating that Biondo was a non-acceptable medical source and contends that the ALJ should have given Biondo's opinion controlling weight.

Defendant asserts that the governing regulation, 20 C.F.R. § 404.1502, effective as of March 27, 2017, requires a licensed psychologist to practice at the "independent practice level."[14]  Under Kansas law, an LMLP does not have the right to practice independently.[15]  Thus, an LMLP is not considered an acceptable medical source.[16]  In Plaintiff's reply, she concedes

---

[14] *See* 20 C.F.R. § 404.1502(a)(2)(i).  This language became effective March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (final rules).

[15] *See* K.S.A. § 74-5362(a).  This statute provides that "[a]ny person who is licensed under the provisions of this act as a licensed master's level psychologist shall have the right to practice psychology so long as such practice is under the direction of a licensed clinical psychotherapist, a licensed psychologist, a person licensed to practice medicine and surgery or a person licensed to provide mental health services as an independent practitioner and whose licensure allows for the diagnosis and treatment of mental disorders."

[16] To the extent that Plaintiff relies upon two District of Kansas cases stating a licensed LMLP is an acceptable medical source, Defendant argues these cases were decided under a previous version of the governing regulation and thus do not contain a current correct statement of the law.  As noted above, the regulation changed effective March 27, 2017.  The District of Kansas cases that Plaintiff and Defendant discuss were decided in 2008 and 2014.  *See Bronson v. Astrue*, 530 F. Supp. 2d 1172, 1182 (D. Kan. 2008); *Huiett v. Colvin*, Case No. 12-1350-SAC, 2014 WL 1095028, at *3 (D. Kan. Mar. 19, 2014).

that at the time of the ALJ's April 3, 2018 decision, Biondo was no longer considered an acceptable medical source.[17]

Biondo was also Plaintiff's treating source. Although a treating source's opinion generally must be afforded controlling weight if it is well-supported by the evidence and consistent with other substantial evidence in the record,[18] this premise is only true if the treating source is considered an acceptable medical source.

> [T]he distinction between "acceptable medical sources" and other healthcare providers who are not "acceptable medical sources" is necessary because (1) evidence from an "acceptable medical source" is necessary to establish the existence of a medically determinable impairment, (2) only "acceptable medical sources" can provide "medical opinions," and (3) only "acceptable medical sources" can be considered "treating sources'" whose medical opinion might be worthy of "controlling weight."[19]

Accordingly, the ALJ's determination that Biondo was not an acceptable medical source and could not render a definitive diagnosis is correct. Furthermore, even though Biondo was Plaintiff's treating source, because Biondo is not an acceptable medical source, Biondo's opinion cannot be entitled to controlling weight.

Nevertheless, Plaintiff contends that even if Biondo is not an acceptable medical source, the ALJ was required to consider the evidence she provided because she is a medical source.

---

[17]Plaintiff does not make an argument that previous statutory provisions should apply as to whether Biondo should be considered an acceptable medical source. Instead, Plaintiff references a case that cites to federal regulations in effect at the time of the ALJ's decision. *See* Doc. 15 at 2 (citing *Branum v. Barnhart*, 385 F.3d 1268, 1271 n.2 (10th Cir. 2004) (citing to the federal regulations in effect at the time of the ALJ's decision)). The Court notes that several of the definitions of what constitutes an acceptable medical source specifically state that these definitions are only applicable to claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1502(a)(6)-(8). With respect to the LMLP definition at issue in this case, there is no such designation. *Id.* at § 404.1502(a)(2). Accordingly, the regulation defines an acceptable medical source to be a licensed psychologist at the independent practice level. *Id.* at §404.1502(a)(2)(i).

[18]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[19]*Linaweaver v. Astrue*, Case No. 10-2621-JWL, 2011 WL 6258814, at *5 (D. Kan. Dec. 15, 2011) (citations omitted); *see also Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) ("Only 'acceptable medical sources' can provide evidence to establish the existence of a medically determinable impairment, only they can provide medical opinions, and only they can be considered treating sources.") (citations omitted).

Plaintiff is correct that the ALJ should consider all the evidence. Under the version of the regulations applicable to Plaintiff's claim, the ALJ must consider all the medical opinions in the record and discuss the weight assigned to each opinion.[20] The ALJ is also responsible for resolving conflicts between differing evidence from medical sources.[21] Ultimately, the ALJ is responsible for determining an individual's RFC.[22] In addition, the ALJ should make sure his decision "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."[23]

Here, the ALJ's decision demonstrates that he did consider Biondo's statement and evidence and provided reasoning for the weight given to it. The ALJ explicitly stated, "[w]hile the undersigned finds Ms. Biondo to be a health care provider who is not an acceptable medical source able to render definitive diagnoses and whose opinion can be controlling, *her statement has been considered*."[24] The ALJ then found that Biondo's opinion lacked support from treatment notes or objective evidence and that it was not consistent with other evidence of record.[25] Noting the evidence in the record with regard to Plaintiff's treatment with Biondo

---

[20]*Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (citation omitted); *see also* 20 C.F.R. §§ 404.1527, 416.927. Different guidelines for weighing evidence now apply for claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *see also McGregor v. Saul*, Case No. CIV-19-496-SM, 2019 WL 7116110, at *3 (W.D. Okla. Dec. 23, 2019) (noting that "[u]nder the revised regulations, the ALJ gives no specific evidentiary weight to any medical opinions.") (internal quotation marks and citations omitted); *Bills v. Comm'r, SSA*, 748 F. App'x 835, 838 n.1 (Oct. 1, 2018) (noting the revised regulations applicable to claims filed on or after March 27, 2017) (citation omitted). Plaintiff's claim was filed in 2015 and thus the Court's review is guided by the previous regulations and case law.

[21]*See* 20 C.F.R. § 404.1527(d).

[22]*Id*. at § 404.1527(d)(2).

[23]*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (quoting SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006)).

[24]Doc. 10 at 41 (emphasis added).

[25]Plaintiff takes issue with one of the ALJ's citations to Biondo's findings in his opinion. In the ALJ's opinion, he attributed a finding to Biondo when the examination was actually done by a nurse practitioner in the same facility. This erroneous citation does not indicate that the ALJ cherry-picked the record. And as Defendant points out, Plaintiff does not explain how it helps her case that the cited record reflects an examination from a different individual at the same facility. The ALJ did not erroneously cite the finding (that Plaintiff was cooperative, calm, and cheerful, with good eye contact, and an appropriate affect). He simply incorrectly attributed it to Biondo instead of the nurse practitioner at the same facility.

through Spring River Mental Health and Wellness, the ALJ stated that Plaintiff continued intermittent treatment from February 2016 through October 2017. The ALJ also set forth specific findings from several different therapy sessions. In addition, the ALJ noted Plaintiff's GAF ratings on different dates and that the treatment notes indicated that Plaintiff appeared to be doing well when she was compliant with medication and therapy. Accordingly, the ALJ set forth his reasons for declining to give much weight to Biondo's opinion and instead affording greater weight to the state agency psychologists.

Plaintiff next contends that the ALJ cherry-picked the medical evidence by relying on evidence to support a finding of non-disability while ignoring other portions of the record that supported Biondo's opinion. Plaintiff highlights the evidence that would potentially support a finding of disability but does not address other evidence in the record demonstrating Plaintiff's improvement with treatment. Nor does Plaintiff address the other evidence of record that supports the ALJ's RFC finding, including evidence that three other psychologists did not find as extreme limitations on Plaintiff's functioning as Biondo did.

Furthermore, the ALJ incorporated certain limitations in Plaintiff's RFC that Biondo's opinion addressed. Specifically, Plaintiff's RFC included such limitations that Plaintiff's work could only involve simple decisions, few work place changes, and limited contact with supervisors, coworkers, and the general public. Thus, it appears that the ALJ included some of the limitations Biondo's opinion discussed. In sum, although the limitations in the RFC were not as limited as Biondo's opinion, it appears that the ALJ discussed and considered the evidence as a whole and supported his decision with evidence of record. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings

from being supported by substantial evidence."[26] As noted above, the Court "may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"[27] Thus, the Court finds the ALJ did not err in formulating Plaintiff's RFC.

**V.  Conclusion**

The ALJ's RFC determination is supported by substantial evidence. Plaintiff has not shown that the ALJ's decision is inconsistent with the Social Security Act, regulations, and applicable case law.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: January 29, 2020

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> UNITED STATES DISTRICT JUDGE

---

[26]*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir 2007) (quotation marks and citation omitted).

[27]*Id.* (citation omitted).